NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-35

COMMONWEALTH

vs.

VINCENT HOWARD LUCAS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In 2018, a jury convicted the defendant, Vincent Lucas, of one count of assault with intent to rape in violation of G. L. c. 265, § 24, and one count of assault and battery in violation of G. L. c. 265, § 13A (a).  After a jury-waived trial, a judge of the Superior Court found the defendant guilty as a habitual offender under G. L. c. 279, § 25 (a), and sentenced him to twenty years in State prison on the conviction for assault with intent to rape.[1]  The defendant appeals the denial of his motion for resentencing under Mass. R. Crim. P. 30 (a), as appearing in 435 Mass. 1501 (2001).  He cites Commonwealth v. Montarvo, 486

_____

[1] The defendant was sentenced to two and one-half years in the house of correction, suspended for twenty years, on the assault and battery conviction.

Mass. 535 (2020), for the proposition that, because the sentencing judge did not believe he possessed the discretion to impose probation, the defendant was entitled to be resentenced. We disagree and affirm the judge's denial of that motion.

Background.  The following facts are summarized from the transcript of the jury trial, which occurred from July 23, 2018, to July 26, 2018.[2]  On the night of August 15, 2017, the victim traveled to Lowell planning to "[t]urn tricks" to obtain drugs. While at a convenience store, the victim saw a woman whose name she thought was Lisa, and told her that she wanted to "get high."  The defendant, who was with Lisa, claimed he had twenty dollars and offered to "go get some stuff," referring to "crack" cocaine.  Eventually the three met a drug dealer, but, when the defendant admitted he did not have any money, Lisa and the drug dealer walked away.

The defendant, now alone with the victim, told her that he had crack, showed her a rolled-up tissue, and convinced her to follow him to a secluded area near a canal to use it.  There the defendant grabbed her, pushed her against a rock wall with her head dangling above the canal, and said, "You want to smoke; right?  You want to smoke?"  The victim understood the defendant

_____

[2] We note that, although both parties cite to the trial transcripts, neither filed the transcripts with the court.

2

to be demanding sex in exchange for the drugs and repeatedly told the defendant, "No." The defendant then took the victim to a nearby grassy area, where he removed her shorts and underwear and penetrated her vagina and anus with his fingers. The defendant yelled, "You're going to die" and "I'm going to kill you," then strangled her with both hands until she lost control of her bowels. As soon as he took his hands from her neck, the victim grabbed her shorts and eyeglasses and ran, leaving her underwear and flip-flops behind.

The victim, with feces on her feet and red marks on her neck, was able to run and scream for help. She gained the attention of a police cruiser and told the officer she had just been raped in a nearby park. In the park, police found the victim's feces-stained underwear and flip-flops.[3]

The defendant's defense at trial was that the victim fabricated the incident and that the victim was not credible because she was a drug user and a prostitute trading sex for drugs. The jury found the defendant guilty of assault with intent to rape and assault and battery and returned not guilty verdicts on two counts of rape and one count of suffocation or

---

[3] After the victim was taken to a nearby hospital, an officer saw the defendant, at the same hospital, wearing the clothing the victim had described. From a photographic array, the victim identified the defendant as the assailant.

3

strangulation.  After a jury-waived trial, the defendant was found guilty as a habitual offender under G. L. c. 279, § 25 (a), and sentenced to twenty years in State prison on the assault with intent to rape conviction.

The defendant appealed his convictions and the denial of his motion for a new trial.  See Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001).  In an unpublished memorandum and order in 2022,[4] we affirmed the defendant's convictions and the denial of the motion for a new trial.  In September 2024, the defendant filed a motion for postconviction relief, arguing that he was entitled to be resentenced under Montarvo.  The sentencing judge denied the motion, and this appeal followed.

Discussion:  "Colloquially referred to as the 'three strikes' law, the habitual offender statute, G. L. c. 279, § 25, enhances the penalty for a defendant who, after two prior convictions resulting in State or Federal prison sentences of three or more years, receives a third felony conviction." Montarvo, 486 Mass. at 535.  In Montarvo, the Supreme Judicial Court found this statute ambiguous and applied the rule of lenity to "read § 25 (a) to provide sentencing judges with the discretion to impose probation."  Id. at 542.

---

[4] See Commonwealth v. Lucas, 100 Mass. App. Ct. 1125 (2022).

The defendant argues that, at the time of sentencing, the judge did not believe that he could impose probation on his conviction as a habitual offender under G. L. c. 279 § 25 (a). A review of the sentencing transcript appears to support the defendant's position that the sentencing judge believed that he was required to impose the maximum sentence.[5]  After the defendant was sentenced, the Supreme Judicial Court announced in Montarvo that a sentencing judge has the authority to sentence a habitual offender to a term of probation.  The defendant argues, therefore, that the judge erred in denying his motion to be resentenced.  We disagree.

Here, in ruling on the defendant's rule 30 (a) motion, the judge made the following order:  "DENIED.  Under no circumstances would this Court have given defendant a probationary sentence, or a different sentence than he received, knowing that the Court could impose probation as an alternative to the sentence that was imposed.  See Commonwealth v. Lemay, 11 Mass. App. Ct. 992, 993 (1981)."  Contrary to the defendant's position, Montarvo does not require a resentencing hearing where, as here, the judge would have ordered the same sentence

_____

[5] In an exchange with the Commonwealth, which was requesting that the defendant be sentenced to the maximum penalty as a habitual offender, the judge said, "I'm required to impose the maximum sentence."  The prosecutor agreed, stating, "Correct."

5

even if he had been aware that probation was a sentencing option.  Rather, Montarvo simply permits a judge to impose probation on a conviction under the habitual offender statute.  Here, the sentencing judge (who was also the trial judge), clearly articulated that "under no circumstances" would he have given the defendant a probationary sentence, or a different sentence, knowing that probation could have been imposed.  We cannot find error "where the record makes clear that probation would not have been considered in any event as an alternative to the sentence mandated by the statute."  Lemay, supra.

Order denying postconviction relief affirmed.

By the Court (Walsh, Toone & Tan, JJ.[6]),

*Paul Little*

Clerk

Entered:  February 10, 2026.

---

[6] The panelists are listed in order of seniority.